**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO. 06-33-02** |
| **LEON HENRY** | : | |

**DuBois, J.**                                          **November 21, 2012**

**M E M O R A N D U M**

**I.      Introduction**

On June 1, 2007, after a jury trial, defendant Leon Henry was convicted of conspiracy to make false statements to a federal firearms licensee, making false statements to a federal firearms licensee, and possession of a firearm by a convicted felon.   On November 25, 2008, this Court sentenced defendant to 96 months' imprisonment, three years of supervised release, an $800 fine and a $300 special assessment.  Defendant promptly appealed his sentence, but not his conviction, to the United States Court of Appeals for the Third Circuit.  The Third Circuit affirmed defendant's sentence on April 26, 2011.

Defendant filed a *pro se* motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody on January 30, 2012 ("§2255 Motion"), and a Memorandum of Law In Support of Motion to Vacate or Correct Sentence Pursuant to 18 U.S.C. §2255 ("Defendant's Memorandum of Law").  The government filed a response on May 7, 2012, and defendant filed a reply on July 12, 2012.  The claims asserted by defendant in his §2255 Motion are as follows: (1) the jury was made aware of defendant's prior conviction for possession of a stolen firearm, violating his due process rights; (2) the jury was made aware of defendant's incarcerated status, violating his due process rights; (3) a demonstrative firearm

received in evidence was unfairly prejudicial to defendant; (4) defendant should have been formally charged with the crime of Witness Tampering, rather than receiving a sentence enhancement under §3C1.1 for obstruction of justice; (5) defendant received an unconstitutional penalty for a future crime when his sentence was enhanced under §5K2.0, for possession of a firearm in connection with another felony; (6) the Court erroneously imposed an $800 fine as a component of defendant's sentence; (7) the Court violated defendant's ex post facto rights by using Sentencing Guidelines that were harsher than those in place at the time of his offenses; and (8) the Court should vacate its separation order barring defendant from his brother.

On July 12, 2012 defendant also filed a *pro se* motion for Summary Judgment with respect to his §2255 Motion. The government filed a Response and Cross Complaint for Summary Judgment on August 15, 2012, and defendant filed a reply on August 31, 2012.

Further, on August 23, 2012, defendant filed a *pro se* Motion to Proceed In Forma Pauperis and a Motion for a More Definite Statement with Respect to the Government's Cross-Complaint for Summary Judgment.

For the reasons that follow, the Court denies defendant's §2255 Motion, Summary Judgment Motion, Motion to Proceed In Forma Pauperis and Motion for a More Definite Statement. The government's Cross Complaint for Summary Judgment is denied as moot.

## II.    Background

The background of this case is set forth in detail in previous opinions. See United States v. Henry, 425 F. App'x 116 (3d Cir. 2011) (affirming District Court's judgment of sentence); United States v. Henry, Cr. No. 06-33-02, 2007 WL 879007 (E.D. Pa. Mar. 21, 2007) (denying miscellaneous *pro se* motions of defendant); United States v. Henry, Cr. No. 06-33-02, 2007 WL 1892678 (E.D. Pa. June 28, 2007) (denying defendant's motions for judgment of

acquittal and for new trial).  Accordingly, the Court recites in this Memorandum only those facts necessary to explain the Court's rulings on the pending motions.

## A.  The Crimes

At trial and sentencing, the government presented evidence showing the following: The case involved multiple attempts, both successful and unsuccessful, by defendant and his brother Andre Henry to acquire firearms through straw purchasers.  Defendant had previously been convicted of two felonies: (1) conspiracy to commit credit card fraud, and (2) possession of a stolen firearm, and thus was prohibited from purchasing firearms.  (TS8 at 101.)  Andre Henry was also a convicted felon and could not purchase firearms.  United States v. Henry, Cr. No. 06-33-01, 2011 WL 3417117 at *1 (E.D. Pa. Aug. 3, 2011).

In the summer of 2003, defendant asked Starlene Herbert if she would buy weapons for him and his brother, specifically inquiring whether she had a clean conviction record so that she would be able to purchase firearms.  (TS5 at 137-38.)[1]  He also asked Herbert to recruit other "females" to obtain identification and purchase weapons for him.  (Id. at 137.)  In response, Herbert recruited Tameka Niblack to straw purchase firearms for defendant and his brother.  (Id. at 138.)

Defendant thereafter gave both Herbert and Niblack money to obtain identification from the Pennsylvania Department of Transportation.  (Id. at 139.)  On October 2, 2003, defendant and his brother drove Herbert and Niblack to the Shooter Shop, a gun store. (T2 at 109, 112.)  Defendant and his brother entered the store and identified a specific AR-15 assault rifle.  (Id. at 109-10.)  Upon exiting, they gave Herbert and Niblack cash and directed the two women to

---

[1] Transcript references are as follows: T1- Motions Hearing of March 22, 2007; T2- Trial on May 30, 2007; T3- Trial on May 31, 2007; T4- Trial on June 1, 2007; TS5- Sentencing on November 3, 2008; TS6- Sentencing on November 4, 2008; TS7- Sentencing on November 24, 2008; TS8- Sentencing on November 25, 2008.

purchase the firearm they had identified.  (Id. at 110.)  However, the store clerk refused to sell

the gun to Herbert and Niblack as they were unable to show the clerk they could operate the

weapon.  (Id. 110-11.)   Immediately afterwards, defendant and his brother drove the two women

to another gun store, Philadelphia Archery and Gun Club.  (Id. at 113, 196.)  Defendant and his

brother again entered the store, identified a specific AR-15 assault rifle, and told Niblack to buy

the gun which they had picked out.  (Id. at 113.)  However, when Niblack attempted to purchase

the firearm the store clerk refused to sell her the gun as she once again was unable to

demonstrate to the clerk that she could operate the weapon.  (Id. at 113, 196.)

As a consequence of these failed purchase attempts, both defendant and his brother

became, in Niblack's words, "more determined . . . [and] more desperate" to have the women

purchase weapons for them.  (Id. at 114.)  That same day, both defendant and his brother gave

Niblack and Herbert training in the use of an AR-15 assault rifle and a nine millimeter pistol.

(Id.)  Defendant specifically told Herbert that the reason for the training was, in Herbert's words,

"to purchase another weapon from another gun shop."  (TS5 at 143.)

On the next day, October 3, 2003, defendant and his brother again asked Niblack to

purchase a firearm, and this time Andre Henry drove her and defendant to Lock's Philadelphia

Gun Exchange.  (T2 117.)  Defendant provided Niblack with the location in the store of the

specific firearm that he wanted her to purchase, an AR-15 Olympic Arms model, as well as over

$1,000 in cash to buy the weapon.  (Id. at 117-18.)  The store did not have an Olympic Arms

model AR-15, but they had a comparable Bushmaster AR-15, which she purchased.  (Id. at 117-

19.)  When she finished buying the gun, Niblack exited the store and "gave [the gun] to Leon--he

looked at it briefly and put it in the trunk of Andre's car."  (Id. at 120.)

Then, on October 4, 2003, Andre Henry drove Herbert and Niblack back to the Philadelphia Archery and Gun club and directed each of them to purchase a nine millimeter Glock handgun. (Id. at 57-58, 121, 197, 200.) Niblack successfully bought a Glock handgun but when Herbert attempted to purchase a similar weapon, she was arrested on an outstanding bench warrant. (TS5 at 143.) Subsequently, on October 8, 2003, Niblack met defendant at his house, where defendant stated that "he wanted to get a Glock 19, because the first Glock 19 [Niblack purchased] was for [his brother]." (T2 at 131.) Andre Henry then drove Niblack to The Firing Line, a gun shop, so she could purchase a Glock handgun for defendant. (Id. at 129-33.) Niblack was given cash and she successfully purchased the firearm. (Id. at 133-35)

Approximately one to two weeks after Niblack purchased the Glock handgun, defendant contacted her again. (Id. at 135.) He stated that he wanted Niblack to stage a break-in of her own residence, by "actually kick[ing] in [her own] back door," and falsely report as stolen the guns that she had purchased. (Id. at 136.) Niblack, however, refused to participate in defendant's scheme, and the break-in was never staged. (Id.)

Defendant was arrested on January 27, 2006 and indicted several times, culminating in the Second Superseding Indictment, which charged defendant with: (1) felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); (2) conspiracy to make false statements to a federal firearm licensee in violation of 18 U.S.C. § 371; (3) making false statements to a federal firearms licensee in violation of 18 U.S.C. § 924(a)(1)(A); and (4) conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371. The jury found defendant guilty of the firearms offenses but acquitted him of conspiracy to commit bank robbery.[2]

---

[2] Co-defendant Andre Henry and numerous other defendants were charged with all such crimes and additional crimes in the Superseding Indictment. Leon Henry moved for a severance of the charges against him, and that

**B.  The Threats**

After defendant was convicted in June 2007, he made multiple threats to kill the prosecutor who handled his case.  In October 2007, when defendant discovered that his cellmate ("Inmate-1") had the same prosecutor, defendant exclaimed that he would "kill that b---ch, her and her daughter." (TS5 at 176.)  Inmate-1 inquired as to how defendant knew the prosecutor had a daughter, and defendant stated that he had seen in his trial transcripts that the prosecutor had requested a continuance to take her daughter to the hospital.  (Id.)  Defendant further told Inmate-1 that he "worked in the medical field, he had access to medical records," and those records could be used to locate the prosecutor and her daughter.  (Id. at 178.)  When Inmate-1 asked why defendant would take such action, defendant said he felt the prosecutor had unfairly convicted him and added that he would use an AR-15 sniper rifle to kill her.  (Id.)

Defendant voiced similar threats to another prison inmate ("Inmate-2").  Inmate-2 testified that in September 2007 he mentioned to defendant that he had the same prosecutor as defendant, whereupon defendant "looked disturbingly angry. . . ." (TS6 at 28.)  Defendant then told Inmate-2 that he would not be in prison for very long and when he got out he would "snatch" his prosecutor and her family.  (Id. at 29.)  He claimed that he would kill the prosecutor's family in front of her, "let her soak it in for about 15, 20 seconds, then he was going to unload the rest of the clip into her."  (Id.)  Defendant also told Inmate-2 that he would use an AR-15 firearm to kill the prosecutor.  (Id. at 42.)

Defendant also threatened Starlene Herbert while they were both incarcerated at the Federal Detention Center prior to defendant's trial.  On May 8, 2007, Herbert recognized

---

motion was granted. United States v. Henry, 425 F. App'x 116, 117 (3d Cir. 2011).  Leon Henry was the only defendant charged in the Second Superseding Indictment.

defendant's voice coming from her cell toilet, through the plumbing of the Detention Center. (TS5 at 147.) Defendant asked to speak with Herbert, and although she refused, defendant told her she should not testify at his trial. (Id.) When Herbert still declined to speak with defendant, he became agitated and declared that he "was going to poison the whole third floor" of the Detention Center, where Herbert was being housed. (Id. at 147-48.)

### C. Sentencing

At sentencing, the Court calculated defendant's sentence pursuant to the Sentencing Guidelines in place at the time the offenses were committed in 2003, the 2002 Guidelines, because they were more lenient than those in place at the time of sentencing. U.S.S.G. §1B1.11(b)(1). Under the 2002 Guidelines the Court determined defendant's base offense level was 14. Two levels were added for obstruction of justice under §3C1.1, for defendant's attempt to have Niblack file a false police report. Two levels were added because the offense involved three to seven firearms, pursuant to §2K2.1(b)(1)(a). Two levels were added for defendant's role in the offense as an organizer, leader, manager or supervisor of the firearm straw purchases, under §3B1.1(c). Four levels were added for defendant's possession of a firearm with intent to commit another felony, namely the possession of an AR-15 rifle with the intent to harm the prosecutor, under §2K2.1(b)(5). Two levels were added for multiple acts of obstruction of justice under §5K2.0 for impeding justice in several ways, namely the concealment of evidence and threatening a co-defendant. Two levels were added for defendant's threats to the prosecutor under §5K2.0.[3] (TS8 41-44, 64, 68.) In sum, the Court determined defendant's total offense level was 28, with a sentencing guideline range of 87 to 108 months. (Id. at 68.) After

---

[3] These were the correct section designations under the applicable 2002 United States Sentencing Guideline Manual. (PSR ¶5.)

consideration of the relevant statutory factors, the Court sentenced defendant within the guideline range to, inter alia, 96 months' imprisonment.

### D.  Appeal

On appeal, defendant did not challenge his conviction and instead argued only that two sentencing enhancements had been applied in error.  First, defendant claimed that the threats to the prosecutor should not have been used as the basis for the two-level enhancement for obstruction of justice under § 3C1.1.  United States v. Henry, 425 F. App'x 116, 120 (3d Cir. 2011).  The Third Circuit held, however, that the obstruction enhancement under §3C1.1 was predicated not on those threats, but rather upon defendant's attempt to have a co-defendant file a false police report, and as such defendant's argument was held to be groundless.  Id.  Second, defendant argued on appeal that the two-level enhancement under 5K2.0, for the threats against the prosecutor, was applied in error.  Specifically, defendant stated that the threats to the prosecutor had already been used as the basis for another enhancement, namely the four-level enhancement for possession of the AR-15 with the intent to harm the prosecutor under §2K2.1(b)(5).  Id.  The Third Circuit rejected this contention as well, holding, inter alia, that the possession of the firearm was conduct separate from the threats themselves, and that, regardless, "double-counting" was permitted in this instance.  Id.  The Third Circuit thus affirmed defendant's sentence.  Id. at 121.

## III.    Discussion

### A.  Standard of Review

Each of defendant's claims includes an allegation that he was denied his Sixth Amendment right to effective assistance of counsel.  The standard for assessing a claim of ineffective assistance of counsel requires a familiar two-part inquiry.  "First, the defendant must

show that counsel's performance was deficient," that is, "that counsel's representation fell below an objective standard of reasonableness." <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense." <u>Id.</u> at 687. With respect to the second part of the inquiry, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

Specifically for appellate counsel, the standard for ineffectiveness is also tied to the <u>Strickland</u> framework. "Appellate counsel . . . is not required to raise every non-frivolous issue on appeal but rather can and should make professional judgments regarding the issues most likely to prevail . . . As with trial counsel, [defendant] must show both that appellate counsel was inept and that, but for counsel's unprofessional errors, the result would have been different." <u>Echols v. Ricci</u>, No. 11-3541, 2012 WL 2928479 at *10 (3d Cir. July 19, 2012).

With that framework in mind, the Court addresses each of Henry's claims in turn.

**B.  Admission of Prior Conviction**

Defendant claims that his right to a fair trial was denied when the jury was made aware of his prior conviction for possession of a stolen firearm. He further contends that his appellate counsel performed ineffectively by failing to raise this issue on direct appeal. This claim is factually meritless.

As a threshold matter, it "is not possible to resolve [a] Strickland claim without first determining if [defendant's argument] is meritorious. If it is not meritorious, the defendant[] cannot successfully argue that counsel's failure to raise the claim on direct appeal denied [his] constitutional right of representation." <u>United States v. Mannino</u>, 212 F.3d 835, 840 (3d Cir. 2000).

At trial, the government and defendant entered into a stipulation, which the Court approved, as to defendant's prior conviction. (T3 at 83-84.) The Court specifically instructed the jury that, pursuant to Government Exhibit 27, "The parties have stipulated and agreed that before October 3, 2003, defendant was convicted of a crime which subjected him to a term of imprisonment exceeding one year." (T4 at 81.) In support of the stipulation the government offered in evidence a certified copy of defendant's federal conviction for possession of a stolen firearm and credit card fraud, and it was received in evidence. (Resp. at 17.)

Defendant now contends that the jury "saw the prior credit card offense as well as the firearm offense" when they examined Government Exhibit 27, and that jury knowledge of the firearm offense prejudiced him at trial. (Mot. at 5.) That argument is not supported by the evidence. The record demonstrates that the jury never saw Exhibit 27, nor did they otherwise learn of defendant's prior conviction for possession of a stolen firearm. The stipulation regarding defendant's past conviction was referenced during trial, but on each occasion the jury was only told that defendant was convicted of a crime which subjected him to a term of imprisonment exceeding one year. (T3 at 83-84); (T4 at 81.) Further, the parties agreed, and the Court ruled on the record, that Exhibit 27 would not go out with the jury during deliberations. Specifically, counsel for the government stated, "I don't think Exhibit 27, which is the certified conviction of the defendant, should probably go to the jury," to which both the Court and defense counsel agreed. (T4 at 100.) As the record demonstrates that the jury never learned the details of defendant's prior convictions, appellate counsel was not ineffective for failing to raise the issue and defendant's habeas motion on this ground is denied.

## C. Defendant's Incarcerated Status

Defendant next asserts that his appellate counsel was ineffective for failing to argue on appeal that defendant's due process rights were violated when the jury was made aware of his incarcerated status. On this issue the record discloses that trial counsel did not object to the testimony relating to defendant's incarceration. (T2 at 66; T2 at 282; T3 at 62.) As such, defendant may only claim that appellate counsel was ineffective for failing to argue on appeal that (1) admitting such testimony amounted to a "plain error" or (2) that trial counsel was himself ineffective for not objecting at trial. See United States v. Iglesias, 535 F.3d 150, 158 (3d Cir. 2008) (holding that where an evidentiary issue is not preserved by objection, it may be reviewed only for plain error); Wright v. Vaughn, 473 F.3d 85, 90 (3d Cir. 2006) (describing an evidentiary argument, in a habeas case, as whether "appellate counsel was ineffective in failing to raise the issue that trial counsel was ineffective . . . ."). The Court rejects both arguments.

Defendant correctly notes that three government witnesses testified regarding his incarceration. Specifically, co-defendant Starlene Herbert stated that defendant threatened her by speaking to her through the prison toilet bowl before trial. (T2 at 66.) Co-defendant Richard Holland testified that he saw defendant in jail prior to trial and defendant had told him to "stick together and go to trial." (T2 at 282.) A third witness ("Inmate-3") testified as to statements made by defendant regarding planned future crimes when they shared a prison cell. (T3 at 62.) In reviewing this testimony, the government referenced defendant's incarceration several times during closing arguments. (Mot. at 11.)

Defendant, in arguing that these references to incarceration violated his constitutional rights, relies on the Supreme Court case of Estelle v. Williams. However, that decision held only that a defendant may not be compelled to wear prison clothes during trial, and that did not occur

11

in this case.  Estelle v. Williams, 425 U.S. 501, 512 (1976).   Defendant next cites to the Third

Circuit decision in United States v. Faulk.  That case, like Estelle, does not support the

defendant's position.  To the contrary, the Faulk court held that five questions by a prosecutor,

one after the other, referencing the defendant's incarcerated status, did not "seriously affect[] the

fairness of [the] trial."  United States v. Faulk, 53 F. App'x 644, 648 (3d Cir. 2002).

Defendant does not cite, and the Court has not found, a single decision in this Circuit

where references to incarceration were held to constitute a due process violation.  Additionally,

courts outside this Circuit have consistently held, in line with Faulk, that the "mere utterance of

the words jail, prison, or arrest" does not amount to a constitutional violation.  United States v.

Atencio, 435 F.3d 1222, 1237 (10th Cir. 2006) (quoting United States v. Villabona-Garnica, 63

F.3d 1051, 1058 (11th Cir. 1995)) (internal brackets omitted); see also United States v.

Washington, 462 F.3d 1124, 1136-37 (9th Cir. 2006) (finding no due process violation for

references to defendant's incarceration, because "the impact of referring to a defendant's

incarceration is not constant as it is with prison garb.").

The foregoing authority demonstrates that the admission of testimony referencing

defendant's incarcerated status was not "plain error", and that trial counsel's failure to object to

such testimony did not fall below an objective standard of reasonableness.  Strickland v.

Washington, 466 U.S. 668, 689 (1984); Iglesias, 535 F.3d at 158 ("An error is a deviation from a

legal rule and it is plain if it is clear or obvious.") (internal punctuation omitted).  As such,

appellate counsel was not deficient for (1) failing to argue that such references constituted a

"plain error", or (2) failing to claim ineffectiveness on the part of trial counsel.  See also; Wright

v. Vaughn, 473 F.3d 85, 91 (3d Cir. 2006) (evaluating ineffectiveness as "whether appellate

counsel could have reasonably believed trial counsel had a valid trial strategy . . . .")  Given that

12

appellate counsel was not deficient in failing to raise a meritless claim, the Court need not address the question whether defendant was prejudiced by counsel's decision not to raise the argument on appeal, and defendant's claim on this issue is accordingly denied. <u>Strickland</u>, 446 U.S. at 697 ("[T]here is no reason for a court . . . to address both components of the [ineffectiveness] inquiry if the defendant makes an insufficient showing on one.").

**D. The Demonstrative Firearm**

Defendant next asserts that his appellate counsel was ineffective for failing to argue on appeal that the admission of a demonstrative firearm into evidence, and certain testimony which referenced the firearm, was unfairly prejudicial. Again, defendant's trial counsel did not object to this evidence. (T2 at 186, 242, 252.) Accordingly, defendant may only claim that appellate counsel was ineffective for failing to argue that (1) admission of the firearm amounted to a "plain error" or that (2) trial counsel was himself ineffective for not objecting at trial. <u>See</u> <u>Iglesias</u>, 535 F.3d at 158; <u>Vaughn</u>, 473 F.3d at 90. The Court rejects both arguments.

Defendant essentially makes a Rule 403 objection in his motion, claiming that the admission of an AR-15 assault rifle into evidence was "more prejudicial than probative." (Mot. at 11.) The AR-15 rifle admitted into evidence was, in fact, purchased as part of the conspiracy with which defendant was charged, but was not the weapon which Niblack allegedly purchased for defendant. (Resp. at 21.) Defendant claims that the jury was misled or confused into believing that the firearm received in evidence was the one purchased on his behalf. (Mot. at 11.) The record does not support such a claim. During the trial it was never suggested to the jury that the admitted weapon was the one purchased by Niblack for defendant. On the contrary, defendant's citations to the record establish that (1) the government explicitly pointed out that the weapon purchased for defendant had not been recovered and (2) the defense successfully

13

objected to testimony regarding the similarity between the firearm received in evidence and the missing firearm, for lack of foundation. (Mot. 13-14.) Further, defense counsel cross-examined Niblack at length using the demonstrative AR-15, emphasizing that the gun she allegedly purchased for defendant was not recovered, although she did claim the gun she purchased was similar to one in evidence. (T2 at 159.)

"When one seeks admission of 'demonstrative evidence,' the trial judge has at least as much latitude as exists when ruling on other questions of admissibility." United States v. Rockwell, 781 F.2d 985, 987 (3d Cir. 1986). The record confirms that the jury was not misled or confused by the admission of the demonstrative AR-15. Several witnesses testified as to defendant's straw purchase and ownership of an AR-15, and admission of a demonstrative AR-15 was therefore probative. (T2 at 159, 252; TS5 at 178; TS6 at 42.) Defense counsel's use of the firearm during trial weighs against any finding that its admission was somehow prejudicial. With such a record it is clear that the court did not abuse its discretion in receiving the firearm in evidence. Accordingly, appellate counsel was not deficient for failing to argue on appeal (1) that the admission of the firearm amounted to "plain error" or (2) that trial counsel's "representation fell below an objective standard of reasonableness," by failing to object. Iglesias, 535 F.3d at 158; Strickland, 466 U.S. at 688. The habeas claim based on admission of the demonstrative AR-15 in evidence is therefore denied.

**E. Sentence Enhancement Under §3C1.1**

Defendant next asserts that his appellate counsel was ineffective for failing to argue on appeal that defendant suffered a due process violation when his sentence was enhanced under §3C1.1 of the Sentencing Guidelines for obstruction of justice. That two-level enhancement was based on the defendant's attempt to have Niblack stage a break-in and file a false police report.

14

Specifically, defendant claims that he should have been formally charged and tried for the crime of Witness Tampering, which contains similar elements to the sentencing enhancement at issue under §3C1.1. The Court notes that, on appeal, counsel challenged this enhancement on other grounds,[4] and the Third Circuit affirmed the Court's ruling. See Henry, 425 F. App'x at 120 (rejecting claim that enhancement under §3C1.1 was based on threats to the prosecutor). This Court rejects defendant's second challenge to this enhancement.

Defendant claims that the §3C1.1 enhancement for obstruction of justice contains elements similar to the crime of Witness Tampering under 18 U.S.C. §1512, and that the government was required to charge him under 18 U.S.C. §1512 instead of seeking an enhancement under §3C1.1. He states that the use of the sentence enhancement denies him the rights, inter alia, of "a presumption of innocence . . . trial by jury . . . and . . . to only be found guilty beyond a reasonable doubt . . . ." (Mot. at 15) (quotations omitted.) This claim is rejected.

In McMillan v. Pennsylvania, the Supreme Court held that sentencing enhancements should be applied by a court through use of a "preponderance of the evidence" standard, and the jury need not consider the facts supporting such enhancements, "even where the sentence turns on specific findings of fact." 477 U.S. 79, 83-93 (1986). The Third Circuit later held that "the right to proof beyond a reasonable doubt does not apply to facts relevant to enhancements under an advisory Guidelines regime. Like the right to a jury trial, the right to proof beyond a reasonable doubt attaches only when the facts at issue have the effect of increasing the maximum punishment to which the defendant is exposed. The advisory Guidelines do not have this effect." United States v. Grier, 475 F.3d 556, 565 (3d Cir. 2007).

_____
[4] See supra Section II.D.

In this case, defendant was sentenced to a term of 96 months, far below the maximum term of ten years authorized by statute for just one of his crimes, felon in possession of a firearm. 18 U.S.C. §922(g)(1).  Defendant's sentence enhancement under §3C1.1 did not have the effect of increasing the maximum punishment and is thus properly regarded as a "sentencing factor[], not as [an] element[] of a crime."  Grier, 475 F.3d at 567.  Accordingly, in connection with the sentence enhancement under §3C1.1, defendant was not constitutionally entitled to the due process rights associated with the defense of a criminal charge with elements similar to those of the enhancement.  As the Court properly applied the sentence enhancement under §3C1.1, appellate counsel was not ineffective for failing to raise this argument on appeal.

### F.  Sentence Enhancement Under §2K2.1

Defendant also contests the four-level sentence enhancement under §2K2.1(b)(5) for possession of a firearm in connection with another felony offense.  He argues that his appellate counsel was ineffective for failing to argue that the enhancement was an unconstitutional penalty for a "future" crime.  The Court rejects defendant's argument on this ground.

Defendant claims that the use of the sentence enhancement §2K2.1(b)(5) erroneously imposed a penalty for a "future" crime.  (Mot. at 16-17.)  However, the Third Circuit has explicitly stated that an enhancement under §2K2.1(b)(5), in its current form, §2K2.1(b)(6), is proper when, as in this case, the Court finds that a firearm was possessed or transferred "in connection with" a future crime.  U.S. v. Dupree, 388 F. App'x 164, 167-169 (3d Cir. 2010).   In Dupree, the Third Circuit held that a four-level enhancement was properly applied under §2K2.1(b)(6), where a defendant gave a firearm to his cousin, and the defendant "had reason to believe" that the gun would be used in a "future felony." 388 F. App'x 164, 167-169 (3d Cir. 2010).

16

In this case, based on the evidence provided at trial, the Court found at sentencing that defendant had organized straw purchases of firearms. (TS7 128-129.) Also, according to witnesses, defendant stated that he owned a gun and that he would use it to kill his prosecutor and her daughter, and the Court so found. (TS5 at 176, 178; TS6 at 28-29, 42; TS8 42-43.) Even though defendant never used a gun in connection with the intended offenses, such testimony demonstrates that defendant "possessed . . . a firearm . . . with knowledge [or] intent . . . that it would be used or possessed in connection with another felony offense . . . ." U.S.S.G. §2K2.1(b)(5) (2002). As defendant's argument "lacks clear merit", appellate counsel was not deficient for failing to raise it on appeal. See Albrecht v. Horn, 485 F.3d 103, 137 (3d Cir. 2007).

### G. The $800 Fine

Defendant next asserts that the court erred in imposing an $800 fine as a component of his sentence. "A defendant cannot bring an ineffective assistance claim challenging a fine because the defendant is not 'claiming a right to be released' from custody under 28 U.S.C. § 2255." United States v. Grandison, No. 90-296-1, 1998 WL 633749 at *1 (E.D. Pa. Sept. 11, 1998). Indeed, "Section 2255 is a device to contest the lawfulness of custody; if resolution of the motion in the petitioner's favor will not affect the plaintiff's custody, the court lacks subject matter jurisdiction to consider the motion." United States v. Marron, Cr. No. 93-90, 1996 WL 677511 at *3 (E.D. Pa. Nov. 22, 1996). As vacating defendant's fine will not affect his term of imprisonment, this claim is denied.

### H. Changes in Sentencing Guidelines

Defendant next argues that the Sentencing Guidelines have changed, "such that in 2005 the offense enhancement became more severe by exceeding 14 levels, against [defendant's] Ex

Post Facto rights." (Mot. at 20.) Specifically, he claims that he was sentenced under Guidelines that were harsher than those in place at the time of his offenses, and that his appellate counsel was ineffective for failing to raise this issue on direct appeal. The Court rejects this argument.

A court at sentencing applies the most lenient Guidelines between those in place when the offenses were committed and those in place at sentencing. U.S.S.G. §1B1.11(b)(1). That is precisely what the Court did in this case. Defendant's crimes were committed in 2003 when the 2002 Guidelines were in place; the 2008 Guidelines were in effect at sentencing. At sentencing, the Court used the 2002 Guidelines because they were more lenient than the 2008 Guidelines.

There were no relevant changes between the 2002 and 2008 Guidelines in any applicable sentence enhancements; the only material change was to defendant's base offense level. The base offense level under the 2002 Guidelines was 14, pursuant to §2K2.1(a)(6), as defendant was a "prohibited person" at the time of the offense. According to the 2008 Guidelines, defendant's base offense level was 20, based on §2K2.1(a)(4)(B), as the offense involved the use of a semiautomatic firearm capable of receiving a large-capacity magazine, and defendant was a "prohibited person" at the time of the offense. The 2002 Guidelines were more lenient, in providing for a lower base offense level, than the 2008 Guidelines.[5]

The record confirms that the Court applied the 2002 Sentencing Guidelines, which were in place at the time the offenses were committed. The final Presentence Investigation Report states that, "The edition of the Sentencing Guidelines Manual used to calculate the guidelines in the report is that . . . effective November 1, 2002 . . . ." (PSR ¶5.) The Court also confirmed at sentencing that "under our prohibition against ex post facto laws, we use the most lenient

---

[5] The Court notes that the original Presentence Investigation Report calculated defendant's sentence pursuant to the 2006 Guidelines, as they were in place when the report was drafted. The 2006 Guidelines are identical to the 2008 edition with respect to defendant's sentence.

guidelines [effective from the time the offense was committed] and I've determined that they are the guidelines effective November 1st, 2002, and the crimes of conviction were committed in that period. So, it's the 2002 guidelines that we're using . . . ." (TS7 at 85; see also TS8 at 42.) The Court thus held defendant's base offense level to be 14, pursuant to the 2002 Guidelines.[6] (Id.)

As defendant was sentenced under the more lenient 2002 Guidelines, which were in place at the time of the offenses of conviction, the prohibition against ex post facto laws was not violated. Thus, appellate counsel was not deficient for failing to raise a meritless argument on appeal, and defendant's claim on this ground is denied.

**I. Separation from His Brother**

Finally, defendant argues that the separation "order" barring him from contact with his brother, Andre Henry, should be lifted.

While defendant writes of a separation order issued by the Court, at sentencing the Court stated, "I'm going to recommend . . . it's the Bureau of Prisons' decision . . . that you be designated to an institution commensurate with your security level, and separated from your brother, Andre Henry." (TS8 at 138.) Accordingly, defendant must exhaust his administrative remedies through the Bureau of Prisons, prior to seeking a writ of habeas corpus. See Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998). The defendant may utilize the Bureau of Prison's appeal process to challenge "any aspect of his[] own confinement." See 28 C.F.R. §542.10. It is defendant's burden to prove the exhaustion of such remedies, and there is no evidence of exhaustion of this claim. See Meyers v. Martinez, 427 F. App'x 125, 127 (3d Cir. 2011).

---

[6] Defendant later acknowledged in a letter to the Court that, "Everyone in the courtroom agreed on using the 2002 guidelines manual . . . because of the ex post facto/due process issue . . . ." (Letter from Defendant, December 15, 2008.) Though defendant claimed that the 2002 Guidelines were treated as mandatory by the Court, in reply, the Court confirmed that, "You were properly sentenced under the 2002 Guidelines and they were, as stated at your sentencing, advisory, not mandatory." (Letter from Court, December 17, 2008.)

Defendant may not assert a claim relating to the conditions of his imprisonment on the present state of the record under 28 U.S.C. §2255, and his claim on this ground is therefore dismissed.

## IV.     Evidentiary Hearing

§2255 provides in part that, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, [and] grant a prompt hearing thereon . . . ."  A district court may exercise sound discretion as to whether to grant such a hearing, but "[i]n exercising that discretion the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  Accordingly, the Court must grant a hearing "when the files and records of the case are inconclusive on the issue of whether movant is entitled to relief . . . ." United States v. McCoy, 410 F.3d 124, 131 (3d Cir. 2005).  For the reasons discussed above, the Court concludes that the files and records of this case show conclusively that defendant is not entitled to relief under §2255.  Accordingly, the Court will not hold an evidentiary hearing.

## V.     Defendant's Other Motions

There are several other pending motions, but each is denied for the reasons that follow. Defendant's §2255 has been fully resolved without the need for an evidentiary hearing, and consequently the following motions are denied as moot:  (1) defendant's Motion for Summary Judgment, (2) the government's Cross-Complaint for Summary Judgment, and (3) defendant's Motion for a More Definite Statement with Respect to the Government's Cross-Complaint. Finally, defendant's Motion to Proceed In Forma Pauperis is denied as unnecessary, as there are no fees associated with the filing of a §2255 motion.

**VI.     Conclusion**

For the reasons set forth above, defendant's §2255 Motion, Summary Judgment Motion, Motion to Proceed In Forma Pauperis, and Motion for a More Definite Statement, and the government's Cross-Complaint for Summary Judgment, are all denied.  An appropriate order follows.